IN THE TAX COURT OF THE
STATE OF OREGON

BLANCO BOGS, INC., et al

*v.*

DEPARTMENT OF REVENUE

(TC 3847)

William M. Ganong, Klamath Falls, represented plaintiffs (taxpayers).

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision rendered June 20, 1996.

## CARL N. BYERS, Judge.

Taxpayers collectively appeal the 1990-91 assessed farm use values for cranberry farms in Coos and Curry counties. The appeal challenges the special farm use assessment on two points: the land-to-vine ratio and gross income per acre.

The legislature has provided for special assessment of farm land to exclude value "attributable to urban influences or speculative purchases." ORS 308.345(1).[1] If sales of farm land do not meet the legislature's test for bona fide farm use, then an assessor must use the income approach to value. ORS 308.345(3). When farm lands are owner operated and there are no comparable rent figures, the appraiser must analyze the owner's actual operating income and expenses for the income approach. After determining typical net income, the appraiser capitalizes net income to determine the value of the assets producing the income. That value must then be allocated between land, at its specially assessed value, and the other income producing assets. In this case, the allocation is between land and cranberry vines, which are exempt from property taxation.

Using similar methods, the assessors of Coos and Curry counties arrived at different values for cranberry lands for the same year. To overcome such inconsistencies, the Department of Revenue (department) assigned a senior appraiser to perform an in-depth study and analysis of cranberry farms in the two counties. The appraiser was to determine a uniform formula that both counties could use in valuing cranberry farms. The appraiser collected significant amounts of data from taxpayers, suppliers, vendors, contractors, processors and others. The appraiser compiled and analyzed this data, and the results and his opinion are found in his report.

---

[1] All references to the Oregon Revised Statutes are to 1989.

Taxpayers accept most of the appraiser's findings. In a pretrial stipulation, the parties stipulated the two issues to be decided by the court. Based on the evidence submitted at trial, the court has phrased the issues as follows:

(1)   In computing the land-to-vine ratio, should the expenses of "vine establishment" include expenses for a third year?

(2)   Should the average number of barrels of cranberries produced per acre be based on cranberry bog acres actually harvested or the total number of cranberry bog acres?

A brief description of a typical cranberry farm will aid in understanding the issues. A typical cranberry farm is 15 acres with 10 acres in bog and 5 acres in support land. Bogs are sculptured in the earth with level beds and diked walls to retain water. The bed of a bog usually consists of peat moss covered with sand. The peat moss holds in water and cranberry vines root in the sand. Neither the peat moss nor the sand provide any nutrients. All of the nutrients come from applied fertilizers. An irrigation system is used to water the bog, which is flooded only during and for the purpose of harvesting the cranberries. Support land surrounding the bogs is used for roadways, sand areas, water sumps or water storage, building sites, parking and other farm uses.

Bogs are planted with cuttings from cranberry vines, usually in the early spring (February through April). The growing season for cranberries extends from spring through summer and the berries are harvested in the fall, usually in September-October. Vines planted in the spring will not produce berries for harvest that fall. The vines require at least two growing seasons to produce berries. Even then, the amount of berries produced and their marketability are points of dispute. Vines usually reach full maturity and maximum production approximately six to seven years after planting and will remain productive for 25 or more years, barring disease or extraordinary circumstances.

### ISSUE (1)

## A. Land-to-Vine Ratio

■ ■  When valuing cranberry land by the income approach, part of the income from the operation will be attributable to the vines. However, cranberry vines are exempt from taxation. ORS 307.320. Therefore, the appraiser must use a method that eliminates the value of the vines or the income attributable to the vines. In this case, the department's appraiser used a method that allocates the income based on the capital cost of land and vines. The appraiser first calculated the capital cost of the developed land per acre, including support acres, at $5,683. He then calculated the cost of establishing the cranberry vines, including soil testing, weed control, vine purchase, planting, fertilizer, machinery and equipment, insurance and taxes. He determined that the cost per acre for vines two years old was $8,635. The appraiser's total cost of land and vines was $14,318 per acre, resulting in a ratio of 39.69 percent to land and 60.31 percent for vines.

■   Taxpayers dispute the appraiser's finding that vine development takes only two years. Taxpayers contend it takes three years to develop a producing vine. The preponderance of the evidence established that vines planted in the spring are typically not picked nor will they produce an economic harvest until the third harvest following their planting. For example, vines planted in March of 1984 would experience three growing seasons, *i.e.*, the summers of 1984, 1985 and 1986, before being picked in the fall of 1986. At that point, the vines would be two and one half years old. The testimony indicated that growers would be reluctant to pick the vines before then because of potential damage to the vines, and there would not be enough berries produced to warrant picking. However, vine expense is considered part of the capital cost only for the time that the vine does not produce a crop. Those expenses incurred during the first two growing seasons are capitalized because no crop is obtained. However, expenses incurred during the third calendar year or growing season typically result in an economic crop. Therefore, vine expenses during that third year should not be capitalized in determining the land-to-vine ratio.

The department's appraiser also used an alternative method to eliminate the exempt value of the vines from his calculation of farm use value. That method imputes an income to the vines and, by subtracting that income as an operating expense, removes the value of the vines from the final estimate of income. Although this approach is theoretically sound, it must be used with great care and consistency. In this case, the court finds that the appraiser made inadequate allowance for the income attributable to the vines. Specifically, the appraiser increased fixed expenses by only $187 per acre to reflect the income attributable to the vines. This followed from using only a 2.81 percent return on the value of the vines in imputing vine income. In contrast, the appraiser used 14.43 percent capitalization rate in computing the value of the land. If the appraiser had used the same interest rate in imputing vine income as he used in calculating land value, he would have imputed a higher value to vines leaving a zero or negative income attributable to the land.

To obtain another perspective, one can reverse the equation and remove the value of the land to find the value of the vines. Using the appraiser's figures, the land income would be calculated by multiplying $5,683 by 2.81 percent, resulting in an income or expense attributable to the land of $159.70 ($160 rounded). Increasing the total expenses by $160 leaves a net income attributable to the vines of $724. When this is capitalized at 14.43 percent, it indicates a value of $5,017 for the vines. What this demonstrates is that the method has validity only if the interest rates used in calculating imputed income and the capitalization rate are the same.

## ISSUE (2)

### Is the Average Production Based on Producing Acres or Total Acres?

The department's appraiser testified that the ideal calculation for special farm use value would be to use mature acres only. Lacking that specific data, he concluded that the best data is the number of producing acres reported by the Ocean Spray Cranberries, Inc., Bandon Receiving Station. This approach excludes nonproducing bog acres; acres which, during any particular year, are nonproducing because they

were recently planted or are in the process of being renovated. Taxpayers contend that the nonproducing bog acreage should be included in the overall average.

The ultimate objective is to determine an overall land value. By using a hypothetical 15-acre farm, the parties seek to reflect all cranberry farms. If there are any cranberry farms with minimal or nonproducing bogs, then those farms must also be reflected proportionately in the hypothetical. To exclude nonproducing bog land while including support land hypothesizes a typical cranberry farm unit that is not realistic. It is important to measure the average productive capacity of the unit, not just harvested bog acres. To exclude lesser producing or nonproducing bog acres overstates the average production of the unit.

The evidence established, and the department's appraiser acknowledged, that the typical cranberry farm will have nonproducing bog acreage. Although cranberry bogs may be on a much longer rotation or production-nonproduction cycle than other farm land, its typical presence must be accounted for when using average figures for average farms. Accordingly, the court finds that nonproducing bog acres must be included in calculating the average production per acre.

Having determined the issues stipulated by the parties, it is appropriate for the parties to compute specific farm use values. Plaintiffs shall submit computations to the court with a copy to defendant. If the parties are unable to agree on the computations, then they shall submit such computations as they deem correct, together with written arguments, and the court shall make the determinations in accord with TCR 65.

## ON DEFENDANT'S OBJECTION TO PLAINTIFFS' CALCULATIONS

William M. Ganong, Klamath Falls, represented plaintiffs (taxpayers).

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision rendered October 17, 1996.

**CARL N. BYERS, Judge.**

This matter is before the court to resolve issues concerning the calculation of special farm use value. The court previously held a trial and ruled on the stipulated issues of (1) land-to-vine ratio and (2) bog acres to be included in the calculations. Based upon those determinations, plaintiffs (taxpayers) and the Department of Revenue (department) submitted proposed calculations of value.

While most appraisals seek real market value, the court must, in this case, determine special farm use value. That value is not based on market data but on farm income. This requires total reliance on the income approach. Although the income approach is an accepted method of valuing property, it has inherent limitations and dangers. In utilizing the income approach, appraisers analyze economic factors, manipulate market data, and engage in mathematical calculations. However, sometimes those formula exercises result in absurd and unreasonable results. Consequently, every appraiser recognizes that the income approach must be tempered by the exercise of intuitive judgment and common sense. This tempering judgment is derived from the perspective and context of the market. This vital part of appraising is not available when determining special farm use value. Furthermore, the motives for engaging in any particular occupation are rarely all economic.

In this case, the proposed calculations of both parties make sense, but both cannot be right. The court has worked

through the calculations, but it has no perspective or market context to verify whether the resulting calculation of value is correct. In addition, very minor changes in the income approach, particularly in the capitalization rate and in the amount of income, make a significant difference in the indicated value.

Having expressed these reservations and limitations, the court will now consider the three issues presented by the parties for resolution in connection with the calculation of assessed value.

## BARRELS OF PRODUCTION PER ACRE

As indicated, the court previously determined that nonproducing bog acres are to be included in determining average production per acre. Using recommendations by the department's appraiser, taxpayers' calculations determined the average production over a three year period (1988, 1989, 1990). However, the department's appraiser used only two years of expenses to calculate average expense per acre and only two years to calculate average production per acre.

Despite the appraiser's general recommendations regarding the number of years, the court finds that it is more appropriate to use average production for two years when using average expenses for the same two years. The court finds that the average production for 1989 and 1990 was 86.885 barrels per acre. The parties are in agreement that each barrel produces gross revenue of $46.59, resulting in a gross income of $4,047.97 per acre.

## EXPENSES

The department seeks to reduce the amount of expenses allowed, reasoning that if nonproducing bog acres are included in the calculations, the average expenses in the appraisal would be less per acre. Taxpayers object, claiming that expenses were not a controverted issue at trial and, consequently, the parties presented no testimony or evidence on expenses per acre. Taxpayers argue that although nonproducing bog acres may incur fewer expenses, other expenses may have been greater. The court finds that the appropriate expense amount to use is that used by the department's appraiser in his report, which is $3,753 per acre.

## CAPITALIZATION RATE

The department contends that a change in the income requires a change in the capitalization rate. This has the effect of backing into a rate, an approach which is less than persuasive. The court finds that the appropriate capitalization rate is 14.43 percent as used in the department's appraisal report and by taxpayers.[2]

## COURT'S CALCULATIONS

Having made these determinations, the court calculates the special farm use value per acre as follows:

Income

Gross Income

| | |
|---|---|
| Avg production/acre x Avg price/acre | $4,047.97 |
| (86.885 barrels x $46.59/barrel) | |
| Less Expenses/acre | ($3,753.00) |

Net Income per acre                                  $294.97

Capitalization

Net Income ÷ Cap Rate

$294.97 ÷ .1443 = $2,044.14 (vines and land/acre)

x        .3969 (land ratio)

Special Farm Use Land Value $ 811.32/acre

Now, therefore,

IT IS ORDERED that Judgment be entered consistent with these findings and calculations.

---

[2] Because the tax rate is a component of the capitalization rate in this case, a separate capitalization rate will need to be calculated for each code area using the appropriate tax rate.